Case number 23-1860 St. Joseph Parish St. Johns v. Dana Nessel et al. Oral argument not to exceed 15 minutes per side. Mr. Hahn, you may proceed for the appellant. Good afternoon, Your Honors. William Hahn, Counsel for Appellant St. Joseph's Parish in St. Johns, Michigan. I believe I reserved three minutes for rebuttal. Given the prior arguments, Your Honors, I thought it might be helpful to just kind of level set about the doctrines that are at issue here. I think a helpful articulation from that in the Sixth Circuit's precedent is in footnote 16 of Kentucky v. Yellen, where the government had made an argument that a certain interpretation of a statute was implausible precisely because it would violate the canon of constitutional avoidance. And that's analogous to what we're hearing here from Michigan that since the ELCRA is going to be, or we can count on Michigan to construe the ELCRA consistent with the First Amendment, either our conduct's not arguably prescribed or we don't have a credible threat of enforcement or both. And that footnote articulates a few principles that might be helpful here. The first one is that for standing purposes, we must accept as valid the merits of the appellee's legal claims, which is to say if when we are pleading, for example, with regard to the BFOQ process, that it would violate St. Joseph's rights to church autonomy as well as the ministerial exception and other free exercise protections to have to go through the process. That must be accepted as valid at this preliminary stage. We are at the pleading stage, and the issue is simply accepting those claims as valid. That's the first principle. The second is that it would be inappropriate for us at the justiciability stage to render a merits interpretation of the provision of the statute at issue there or the ones at issue here, and then to declare based on that merits interpretation that the controversy is not even justiciable. And that's what would happen effectively if we were told we have to go through these processes, we have to count on how Michigan is going to construe the ELCRA after we're investigated or after we're sued. An invitation to a prior restraint is not a basis to defeat pre-enforcement standing. And finally, I would just say, Your Honor, the key language here, I think, this third principle. This is a direct quote from Yellen. After all, if the laws of the United States, when given one construction, would establish jurisdiction and would defeat it when given another, then the plaintiff has established jurisdiction. We're looking for, as was said in McKay, an argument. So going back to the first question I had, do you concede that at some point we have to do our best judgment on what the statute actually means in order to resolve your constitutional claim? I think what you have to do at this stage, Judge Murphy, is simply ask what SBA list asks, which is does the law sweep broadly and cover the- I get for standing, arguably. I'm just trying to figure out the difference between standing and the merits. And so at some point, on the merits, the court's task would be to determine whether the statute as applied to you would violate the First Amendment. But in doing so, don't we have the duty to actually interpret what the statute means to see if it even applies to you? Not just arguably, actually. At the merit stage, that would happen. But Lujan is helpful in articulating the difference that at this stage, at the preliminary stage, where we just have to show general facts, as Block says, that our conduct is implicated by the statute. Those subsequent questions about have we shown the specific facts needed to show a violation of the statute, that can be averred through discovery. That can be- What would happen if we said you had standing but then interpreted the statute to not cover the conduct in which you would engage? Again, would that be a ruling for the defense because you're bringing First Amendment claims and we would say the statute doesn't even reach your conduct? I think it would be done in a more specific basis than that. So, for example, St. Joseph is looking for protection because it conducts its masses and its other religious ceremonies in a manner open to all. Rouch World was taken all the way to the Michigan Supreme Court by Michigan for refusing to host a same-sex wedding. So we would need a declaration that makes clear that when we have religious services, we can conduct them consistent with our religious- So assume that we didn't interpret the statute to cover that conduct. It's just a legal question what the statute means. So that would not be a declaration on the First Amendment, though. That would be a declaration on Michigan law. I think it would be a declaration that the First Amendment protects the right, as was said in Our Lady of Guadalupe more generally, the right of religious organizations to make internal management decisions affecting their faith and mission. And so, for example, also more specifically, Calvin University, which is being sued by a former employee for participating or officiating a same-sex wedding, St. Joseph would also take action against its employees if it engaged in that kind of conduct. And we would need a declaration that makes clear that we cannot be sued as a function of taking action against our employees, some of whom may even qualify for ministerial status under the First Amendment, simply because we exercise our religion with respect to religiously motivated decisions. I'm struggling with some of the interpretation of the law in your briefing. But let's assume we think steps one and two of standing are met and we are at the credible threat of enforcement stage. You indicate that this enforcement presumption, as you argue, comes from the United States Supreme Court and you invoke Virginia. I'm really struggling with the extent of that claim because it seems to me true that the court didn't invoke that kind of presumption in Dreyhaus, which followed. The Supreme Court has issued Dreyhaus since that time. It's a much more recent case and it discusses pre-enforcement challenges in far more detail. How can it be that there exists an enforcement presumption under the Virginia case? I think that the understanding taken by 10 circuits is well-reflected in what this court said in NRA v. McGaugh, which is that when a legislature enacts a new statute, and it's been very public in its articulation of that, we cannot expect that the government is going to sit idly by while the kinds of violations that the statute was intended to go after are occurring. I think that was one of the other things that concerned me, this reference to 10 circuits that have applied the enforcement presumption. I'm not seeing that. I'm looking at the three circuits that have implied it, or at least addressed it and applied it, the second, the fourth, and the fifth, and that's only where there was no disavowal. There are six circuits that post-SBA list have not applied an enforcement presumption, and that's part of your count of 10. Instead, they look to the surrounding factors. So is it still your claim that the McKay surrounding factors do not govern in our own circuit? Respectfully, Your Honor, that's not our claim. Our claim is that McKay is a poor fit for our facts because McKay dealt with a situation, as you know, with an administrative order that could not be enforced by the defendants at issue, and disavowal, therefore, was something. They didn't have the authority one way or the other to disavow the law. Whereas here, there's no dispute that the ELCRA is aggressively enforced, and the defendants themselves have said that disavowal is impossible. So that's why we think, moreover, McKay dealt with, as you know, a summary judgment posture, where, as McKay said, specific facts on standing was required. Block makes clear that at the pleading stage, which is where St. Joseph is, you need general facts to show a reasonable fear of prosecution. And in five cases, this Court has made clear that when you have the two things that Michigan has said that weigh against defendants, they say that at pages 33 to 34 of their brief in our case, which is to say statutory attributes that allow for both public and private enforcement, as well as a refusal to disavow enforcement, those are two of the four McKay factors, and that's enough to get pre-enforcement standing under this Court's precedence. What's wrong with the theory that the second and third elements of standing are interrelated? So the second element is it arguably prescribed, and the third is credible threat. And you cite the case law that suggests just the enactment of the statute without a disavowal is enough, but it seems to me in a lot of those cases the conduct was unambiguously, not just arguably, falling within the statute. So I agree with you that there might be a presumption of enforcement when it's just plain as day that the conduct is prescribed. And so it would take even a Fourth Circuit case, a North Carolina case, suggested that even a promise of not enforcement was not enough in that scenario. Then maybe you need a little bit more, though, when it's a little less clear whether the conduct is prescribed by the statute. Now, you may well meet in the end the arguably prescribed. I recognize that, but it doesn't strike me as unambiguously falling within it. So why wouldn't we think when it's just kind of at the level of just arguable and not unambiguous, we should ask for a little bit more in terms of credible threat of prosecution? Well, I think the Fifth Circuit in Franciscan made the point well when it said that there is standing when the conduct that the plaintiff is engaging in is not only arguably restricted, but that defendant's promise is to not enforce the law or to take into account the First Amendment or religious freedom protections is so vague that the scope of liability was both unknown by defendants and unknowable by those regulated by it. The Seventh Circuit in Brown v. Kemp says something very similar, that when a law at issue goes up against the constitutional ceiling and the defendants, the government, can't even say for sure when it gets crossed, that that cuts in favor of standing, it doesn't cut against it. Didn't Brown discuss McKay factors too, I think, for the Seventh Circuit? But I guess my other significant concern is the claim that the McKay test doesn't apply to cases like this and the citation to Online Merchants Guild, but Online Merchants Guild applied McKay, didn't it? It did, Your Honor, but Online Merchants also expressly says that this court has found standing without any warning letter or specific enforcement whatsoever. It says that at page 561. Because it has found it in those circumstances does not mean that it doesn't apply to this case. The McKay factors apply. That's just you're giving me a factual bit from that case as opposed to the conceptual argument that you made that there's a pre-enforcement presumption everywhere. And I'm asking you, Counselor, because I just don't see it. And I don't see it specifically in seven of the circuits that you indicated to assume it. If you're looking for the magic word presumption in every single case, I agree with you that you're not going to find it. But I think the important point is the reasoning. And the reasoning probably best reflected in this circuit most recently in Kareem, which is that there are special considerations in the First Amendment context when we're assessing a credible threat of enforcement. And there it specifically refers to the chill on First Amendment rights that we need to be cognizant of when we're analyzing what a credible threat is. This is why Michigan's break with the national consensus and also requiring specific enforcement history is so problematic. If you think about a law like Title VII, Title VII just removes from liability altogether all religiously motivated decisions with respect to employment. It does that even when there's also a BFOQ process. But it recognized in Amos, the Supreme Court decision on this, goes through this history in the 1972 amendments, that we were not going to let fear of potential liability create a situation where religious institutions and religious people, frankly, become afraid of simply carrying out their mission. And moreover, as the Supreme Court more recently articulated in Carson v. Macon, if we allow bureaucracies to scrutinize whether and how a religious institution pursues, in that case, its educational mission, we would be inviting state entanglement with religion. And we hear this throughout Michigan's briefing. It repeatedly says things like, there has not been a similarly situated entity to St. Joseph that has been investigated. And that's how it's allowed to distinguish the fact that it has gone after multiple religious institutions with comparable religious beliefs. You will have your rebuttal. Thank you, Your Honor. Hopefully I just have a few points left for the panel. If you look at SBA list and online merchants, both of those cases applied the same test. The test is the same everywhere. You have to have a credible threat of enforcement. You have to have conduct that's going to violate it. And you have to have a statute that prescribes your conduct. So that's the same. Now, some circuits don't use the McKay factors, but this circuit does use the McKay factors. Online merchants use the McKay factors. Susan B. Anthony looked at the fact that there was past enforcement, ease of filing complaints, possible criminal penalties. And they use criminal penalties, which isn't really one of the McKay factors, but it's not an exhaustive list. So you need something to root this thing before the court so there's a case in controversy for it to rule on so that this panel is not giving an advisory opinion on all of the activities conducted by these religious entities. Counsel brought up Dana Nestle's comments. I think at best they may be able to prove some animus, but that doesn't mean she's going to violate the laws of the state. It's also important to note that Dana Nestle does not enforce the Elliot Larson Civil Rights Act. That is done by the Michigan Civil Rights Commission and the Michigan Department of Civil Rights exclusively. So her comments don't relate to this case. And as the court noted, comments during admission or the enactment of the new legislation didn't find their way into the act. The same rights to apply other laws when interpreting the ALCRA apply as they did before sexual orientation and gender identity were added. And I think it's important just to note that there is appeals process. There's arguments that it's a foregone conclusion they'll be ruled against, which I don't think there's any evidence of that. But if they are, you can appeal to the circuit court. And if the circuit court disagrees with you, you can appeal to the Michigan Court of Appeals. And if you disagree with that, you can go to the Michigan Supreme Court. So there is a process that they can engage in to get answers as to how the statute will be applied to them. I can see how that goes to pragmatic prudential rightness, but is there any case law for the notion that the fact that you can get an opinion from the agency through a state process eliminates a credible threat of enforcement for purposes of Article III? I don't think it eliminates the credible threat. I think the distinction is... Or shows that there's no credible threat. I didn't mean to treat it that way. If they can come before this court if they have standing. So I think that's the point that I'm making is not that they can never come to the federal court and ask for a declaratory judgment in a particular set of circumstances. It's here they have not met the standing requirement. I don't have anything further unless the court has questions. Thank you. Thank you, Your Honors. Briefly, I thought it might be helpful to just identify the various statutory carve-outs that have been referred to by Michigan to show how, in fact, in every single one of them, they're not really protecting our First Amendment protections, or at least they don't have to. And that's the point for arguably prescribed and a credible threat. Everything turns on Michigan's discretion and regulatory power. The first one that they articulate involves only the public accommodations provisions. That's the except we're permitted by law language. So even if you completely agree with Michigan that, of course, they're going to always consider the First Amendment and, of course, their understanding of the First Amendment, despite all past practice, is going to completely agree with St. Joseph's understanding. That would not protect us from liability either as an employer or as a school. The second with regard to the BFOQ process, the BFOQ process also doesn't apply to education and it doesn't apply to any liability for use of our services. But moreover, the process itself not only requires a handover of every bit of requested information from the commission, a failure to provide any information that the commission requests is automatically a reason. This is from the rule. It says it results in the denial of the application. That's rule 37.25. So they could... At some point there has to be an adjudication, whether it's before the commission or in the court, and that necessarily involves somewhat of an imposition so that the dispute resolver can know the facts. I mean, that's just inherent in line drawing. There does need to be at some point, I'm not sure I would call it an imposition, but there needs to be a determination. The problem is the determination needs to be consistent with the Constitution. The inquiry in the BFOQ process is not asking, have you satisfied the ministerial exception? It's not asking, does this fall within church autonomy? It's asking, is it reasonably necessary for the operation of your business to apply, in our case, Catholic understandings to this employee? We have to do that for every single employee on a five-year basis. The First Amendment doesn't know that inquiry. There's no reasonable necessity graft onto church autonomy or the ministerial exception. But that's how Michigan says it would be approaching these issues. And the point about the educational piece, this is a helpful contrast, because Michigan knows how to disavow enforcement and to carve out specific things from the statute, from liability. It carves out, for example, the ability to go after religious schools when they prefer co-religionists in admissions. It exempts them related to religion in the admissions process. It doesn't exempt them for religiously-motivated decisions on anything else, even in matters of discipline. So if we want to enforce our... What about the declaratory judgment provisions? You were sorting through all of those and saying that they were too narrow for your client. So why wouldn't a request for declaratory judgment provide the information that your client needs? My time has expired. May I answer your question? Briefly, I would simply say, Your Honor, the declaratory relief, which we're not obligated to do, which Michigan has already proven to misunderstand the First Amendment in, we point that out at page 37. But the fundamental point, Your Honor, is that the bottom line is it still turns on Michigan's regulatory discretion. Is a Michigan regulator going to decide that we have First Amendment protections, or are they going to disagree? Or is a court going to decide? And in both, don't you have to have the particular facts in order to have that determination made? At the pre-enforcement standing stage, Your Honor, all we have to show is that we're engaged in constitutional conduct, the law sweeps broadly enough to cover it, and that we have a credible threat of enforcement. An invitation to a prior restraint is not an exemption around SBA list. Thank you.